UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISON

| | |
|---|---|
| LAUREN SACKMAN individually and as mother of HANNAH ROSS, deceased, and as Administrator of the Estate of HANNAH ROSS, deceased,<br><br>     Plaintiff,<br><br>v.<br><br>BALFOUR BEATTY COMMUNITIES, LLC; BALFOUR BEATTY MILITARY HOUSING MANAGEMENT, LLC; JOHN DOE; JANE DOE; RICHARD ROE CORPORATION; and MARY DOE CORPORATION,<br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action File No. 1:13-CV-00066<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## AMENDED COMPLAINT FOR DAMAGES

COMES NOW, Lauren Sackman, Plaintiff herein, by and through the undersigned counsel, and by agreement of the parties files this Amended Complaint for Damages, and respectively alleges as follows:

### JURISDICTION, VENUE & PARTIES

1.     This is an action for wrongful death, negligence and related claims arising under the Fair Housing Act, 42 U.S.C. § 3601, *et seq.*, and under the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.*  This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1441.

2.     Plaintiff is a resident of Bell County, Texas.  Defendant Balfour Beatty Communities, LLC is a Delaware limited liability company with its principal place of business in

Pennsylvania. Defendant Balfour Beatty Military Housing Management, LLC is a Delaware limited liability company with its principal place of business in Pennsylvania. Defendants are diverse as to Plaintiff. The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states, and, therefore, this Court has diversity jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441.

3. Venue is proper in this district under 28 U.S.C. §§ 1391 and 1400(a).

4. Plaintiff Lauren Sackman ("Ms. Sackman") is a surviving parent of Hannah Ross ("Hannah"), who died at age seven (7) on April 29, 2012. Ms. Sackman is, therefore, authorized on behalf of herself and through the express consent of Jeffery Ross, Hannah's biological father, to bring this action in tort for the wrongful death of their child. O.C.G.A. § 19-7-1.

5. As Administrator of the Estate of Hannah Ross, deceased, Ms. Sackman is also authorized to bring claims belonging to Hannah in life and belonging to her estate, including but not limited to claims for pre-death pain and suffering and medical, funeral and burial expenses. O.C.G.A. § 51-4-5(b).

6. Hannah was a disabled individual with severe autism. Hannah's autism substantially limited one or more of her major life activities, and she was an individual with a disability as defined by 42 U.S.C. § 12101 and as used in Title II of the ADA, 42 U.S.C. § 12132; 28 C.F.R. § 35.104; the FHAA at 42 U.S.C. § 3602(h); the Rehabilitation Act at 29 U.S.C. § 705(20), and Ga. Code Ann., § 8-3-201 (7). Hannah is also an individual with a handicap, as defined in 24 C.F.R. § 8.3 and 24 C.F.R. § 100.201.

7. On April 28, 2012, Hannah eloped from her home located at 135 Cypress Circle, which was part of the Lakeview neighborhood located on Fort Gordon Army Base ("Ft. Gordon"), Richmond County, Georgia. At all times material to this action, said property was

part of over eight hundred and fifty (850) homes and 6 neighborhoods owned and/or controlled by Defendant Balfour Beatty Military Housing Management, LLC ("Military Housing Management") pursuant to an agreement between the United States government and Military Housing Management's subsidiary corporations.

8. Defendant Military Housing Management engaged Defendant Balfour Beatty Communities, LLC ("Balfour Communities"), a related corporation, to professionally manage these properties. Defendant Balfour Communities received fees for such services.

9. Defendant Military Housing Management is and was at all material times a Delaware corporation authorized to do business in the State of Georgia and remains actively engaged in transacting business in Richmond County, Georgia through its operation, management and control of military housing located at Ft. Gordon. Military Housing Management may be served with this Amended Complaint for Damages through its registered agent for service, Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross, GA 30092.

10. Defendant Balfour Communities is and was at all material times a Delaware corporation authorized to do business in the State of Georgia and remains actively engaged in transacting business in Richmond County, Georgia through its operation, management and control of military housing located at Ft. Gordon. Balfour Communities may be served with this Amended Complaint for Damages through its registered agent for service, Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross, GA 30092.

11. Hereinafter, Defendants Military Housing Management and Balfour Communities will be collectively referred to as "Balfour Beatty".

12. Whenever in this Complaint it is alleged that Balfour Beatty did any act, or failed to do any act, it is meant that the officers, agents or employees of the Defendants respectively performed, participated in, or failed to perform such acts while in the course and scope of their employment or agency relationship with Balfour Beatty.

13. On April 29, 2012, Hannah's body was found in Soil Erosion Lake located adjacent to the Lakeview neighborhood where she and her family resided. The cause of death identified on Hannah's death certificate death was drowning. Hannah's drowning and death were the result of the acts and omissions complained of herein.

14. It is Plaintiff's intention to name as defendants each corporation, partnership and individual or other entity that, either directly or by joining with others, was responsible for the action and inaction that caused Hannah's death. Defendants John Doe, Jane Doe, Richard Roe Corporation and Mary Doe Corporation are as-yet-unknown entities within the network of individuals and businesses which participated in these acts and omissions.

15. Plaintiff also intends to name as defendants any other corporation, partnership and individual who are or were an alter ego of Defendants, or who were joint venturers with Defendants in the establishment, ownership, operation, management or control of the Balfour Beatty property from which Hannah eloped. Defendants John Doe, Jane Doe, Richard Roe Corporation and Mary Doe Corporation are as-yet unknown entities that were or are alter egos of Defendants or joint venturers with Defendants in the establishment, ownership, operation, management or control of the subject property. Plaintiffs cannot determine the exact number or identities of such individuals or entities at this time.

16. Whenever the term "Defendants" is used in this Complaint, such term collectively refers to and includes all defendants in this lawsuit unless specifically restricted within a cause of action.

17. The Defendants are directly liable by virtue of their own conduct for the wrongful acts detailed herein. Additionally, Plaintiff pleads in the alternative that the Defendants are also vicariously or indirectly liable and responsible for each and every act and omission stated herein and the resulting damages. More specifically, the Defendants are vicariously and indirectly liable and responsible for the wrongful conduct detailed herein under one or more of the following alternative legal theories:

a. **Agency:** At all material times to this lawsuit, Military Housing Management and Balfour Communities acted as agents for one another. Each ratified or authorized the acts or omissions of the other.

b. **Joint Venture/Enterprise:** In the alternative, the Defendants each remain liable for the acts and omissions of the other because they were engaged in a joint venture and enterprise and acted in concert in the establishment, operation, management, and control of the military housing at Ft. Gordon. The Defendants shared a common purpose in establishing, operating, managing, and controlling the military housing at Ft. Gordon and combined their property and labor in the military housing at Ft. Gordon for the purpose of making a profit. The Defendants each had a right of mutual control over the establishment, operation, management, control, supervision and maintenance of the military housing at Ft. Gordon.

## FACTUAL BACKGROUND

18. At all material times, Balfour Beatty personnel, which included, but were not limited to, project directors, community managers, assistant community managers, life works

coordinators, resident specialists, receptionists, facilities managers, and work order administrators, were agents (actual or apparent), servants, and/or employees of Balfour Beatty, and Balfour Beatty held them out and represented them as such. Major and Ms. Sackman and their family justifiably relied on those representations in allowing Balfour Beatty personnel to provide them a safe and secure residence with accompanying residential property management and affiliated housing services. At all material times, Balfour Beatty personnel were acting within the course and scope of their agency or employment with Balfour Beatty such that any acts or omissions on the part of said personnel while serving the Sackmans are attributable to, and imputed to, Balfour Beatty pursuant to the doctrine of *respondeat superior* or similar theories of vicarious liability. Alternatively, such personnel were borrowed servants of Balfour Beatty.

19. At all times applicable to this Complaint, Balfour Beatty provided residential property management and affiliated housing services to residents, such as Major and Ms. Sackman and their family ("the Sackmans"), and Balfour Beatty held themselves out to the public, including the Sackmans, as qualified to properly provide such services.

20. More specifically, at all times material to this action, Balfour Beatty marketed and held itself out to the public as being focused on meeting the unique needs of each of its clients, including the Sackmans, and able to tailor its residential property management and affiliated housing services according to the unique needs of its customers. Balfour Beatty also marketed and held itself out to the public as able to meet the needs of its residents by providing safe, well-maintained and comfortable living environments with support from trained employees.

21. Additionally, at all times material to this action, Balfour Beatty marketed and held itself out to the public as employing a Zero Harm risk management program which concentrated

on accident prevention and safety, resident emergency planning, and implementation of government regulated safety programs. As part of this program, Balfour Beatty assumed the duty to anticipate risks and take appropriate precautions to equip every residential location and community under its management with appropriate safety equipment and safety information, and to perform regular checks and inspections to provide safe environments for residents, including the Sackmans.

22. Notwithstanding Hannah's disabilities, she and her family were otherwise qualified to receive the services and benefits provided by Balfour Beatty.

23. In mid-February of 2012, Major John Sackman, Hannah's step father, received word from the United States Army that he was being transferred from California to Ft. Gordon, Richmond County, Georgia. Soon thereafter, Ms. Sackman began making arrangements to procure suitable housing that would meet the special needs of her two autistic children, including Hannah whom had been designated an elopement or flight risk.

24. Beginning on or about February 24, 2012, Ms. Sackman began communicating with Balfour Beatty' representatives regarding its assignment of housing to Major and Ms. Sackman while at Ft. Gordon. During said communications, Ms. Sackman repeatedly informed Balfour Beatty that her children had autism that Hannah was considered a flight risk, that her family participated in the Army's Exceptional Family Member Program, and that additional safety features, such as fencing, would be required of any home selected so as to ensure her children's wellbeing given their disabilities.

25. Notwithstanding this knowledge, Balfour Beatty assigned the Sackmans to a home located at 135 Cypress Circle in the Lakeview neighborhood on a lot adjacent to Soil Erosion Lake, a water retention pond that bounded the northern side of the Lakeview

development. At no point in time did Balfour Beatty, its agents, representatives and/or employees, ever mention the existence of the lake to Major or Ms. Sackman, although they had actual knowledge of its presence. Despite the Lakeview name, the presence of the lake was not visible from the neighborhood because of a wooded buffer between the development and the lake.

26. On or about March 29, 2012, the Sackmans arrived in Augusta, Georgia for the first time.

27. On or about March 30, 2012, the Sackmans met with Resident Specialist Nicole Campbell ("Ms. Campbell") of Balfour Communities to preview the home that had been selected and assigned to the Sackmans by Balfour Beatty, located at 135 Cypress Circle.

28. During the Sackmans' preview of the assigned home, Ms. Sackman expressed to Ms. Campbell concerns she noted regarding the safety and security of the home on account of her children's disabilities.

29. More specifically, but not limited to those concerns described herein, while viewing the exterior of the home, Ms. Sackman brought to Ms. Campbell's attention concerns that the fence did not lock appropriately, that it did not enclose a side door to the house, and that its height was insufficient to constrain Hannah. Ms. Sackman inquired whether modifications to the existing fence could be made, and Ms. Campbell informed her that the company would not modify the fence. Ms. Sackman suggested that she would pay for the modification to the fence, but she was still told that no modifications would be permitted.

30. Concerned that no modifications to the fence would be permitted, Ms. Sackman questioned Ms. Campbell about alternative means of securing the home. More specifically, but not limited to those concerns described herein, while viewing the interior of the home, Ms.

Sackman inquired whether additional or replacement locks could be installed to the home's exterior doors since the present locks were simple thumb-turn dead bolts which could easily be manipulated by Hannah. In response to her inquiry, Ms. Campbell informed Ms. Sackman that the door locks could not be modified. The Sackmans offered to fund the expense of adding additional locks or replacing the present locks with more secure locks, but Ms. Sackman was told that if they added or changed the locks, the Sackmans would be issued a citation for each lock added or modified, and that the family would be held responsible for replacement of the door frames. Ms. Campbell further stated to Ms. Sackman that the family would be subject to eviction if they received three citations.

31. When Ms. Campbell was asked by the Sackmans about alternative housing, they were informed that 135 Cypress Circle was the only available property given the size of their family and Major Sackman's rank.

32. Relying on said representations made by Balfour Beatty regarding the requested modifications and the lack of alternative housing, the Sackmans' reluctantly accepted the assigned home. Moreover, given Ms. Campbell's insistence that changes to the fencing and locks would not be permitted, and fearful of the consequence of eviction from their home if changes to the locks were made, no modifications or further requests for such were made by the Sackmans.

33. At or about 6:45 P.M on April 28, 2012, while Ms. Sackman was preparing dinner for her family, Hannah eloped from the family's assigned home at 135 Cypress Circle through the unfenced, side exterior door.

34. On April 29, 2012, divers pulled Hannah's lifeless body from the bottom of Soil Erosion Lake.

## COUNT I
## FEDERAL FAIR HOUSING AMENDMENTS ACT

35. Plaintiffs incorporate Paragraphs 1 through 34 as if fully set forth herein *verbatim*.

36. Defendants conduct as described herein constituted discrimination against Hannah and her family because of Hannah's disability.

37. Defendants injured Plaintiffs in violation of the federal Fair Housing Amendments Act (hereinafter, "FHAA") by committing the following discriminatory housing practices, among others:

   a. by interfering with Plaintiffs in the exercise or enjoyment of, or on account of their having exercised or enjoyed, or on account of their having aided or encouraged any other person in the exercise or enjoyment of rights guaranteed by the federal Fair Housing Act, in violation of 42 U.S.C. § 3617;

   b. by intentionally refusing to permit, at the Sackmans' expense, reasonable modification of the existing premises necessary to afford Hannah and her family full enjoyment of the premises, in violation of 42 U.S.C. § 3604(f)(3)(A).

   c. by intentionally refusing to make reasonable accommodations in their rules, policies, practices or services when such accommodations were both reasonable and necessary to afford Hannah and her family equal opportunity to use and enjoy the dwelling, in violation of 42 U.S.C. § 3604(f)(3)(B).

38. Plaintiffs suffered damages, both real and intangible, as a result of Defendants' discriminatory conduct, and as such, are aggrieved persons as defined in 42 U.S.C. § 3602(i) entitling them to compensatory damages pursuant to 42 U.S.C. § 3613(c)(1).

39. Defendants' conduct was carried out with wanton, conscious, reckless and outrageous disregard for Plaintiffs' rights and Hannah's mental and physical health, safety and

welfare. Punitive Damages should be assessed to deter Defendants from such conduct in the future pursuant to 42 U.S.C. § 3613(c)(1).

40. Plaintiffs are entitled to attorney fees and litigation costs, pursuant to 42 U.S.C. § 3613(c)(2).

## COUNT II
## REHABILITATION ACT

41. Plaintiffs incorporate Paragraphs 1 through 34 as if fully set forth herein *verbatim*.

42. Defendants' conduct as described herein constituted discrimination against Hannah and her family because of Hannah's disability.

43. Upon information and belief, Balfour Beatty is contracted by the United States Government to provide, manage and oversee housing on military bases to United States Service Members thus, at all material times Balfour Beatty was receiving federal financial assistance as defined by 29 U.S.C. § 794 (b)(3)(A).

44. Defendants' conduct constituted discrimination against Hannah and her family because Defendants denied Hannah and her family the benefits of, and subjected them to discrimination under Defendants' programs and activities receiving federal financial assistance, solely by reason of Hannah's disability, in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 and HUD regulations 24 C.F.R. § 8.4.

45. Defendants have injured Plaintiffs in violation of Section 504 of the Rehabilitation Act by committing the following discriminatory housing practices, among others:

   a. by intentionally refusing to make reasonable accommodations in their rules, policies, practices, or services when such accommodations were both reasonable and necessary;

    b. by intentionally prohibiting Hannah and her family from paying for and making reasonable accommodations and modifications to their home where such were both reasonable and necessary.

46. Plaintiffs suffered damages, both real and intangible, as a result of Defendants' discriminatory conduct, and as such, are entitled to compensatory damages pursuant to 29 U.S.C. § 794a.

47. Plaintiffs are entitled to attorney fees and litigation costs, pursuant to 29 U.S.C. § 794a.

## COUNT IV
## NEGLIGENCE

48. Plaintiffs incorporate Paragraphs 1 through 34 as if fully set forth herein *verbatim*.

49. The Sackmans repeatedly made it known to Defendants that their daughter, Hannah, was disabled, was a "flight risk," had a propensity to elope, and was unable to appreciate dangers and unsafe conditions.

50. Knowing this, Defendants undertook the responsibility to provide suitable housing for the Sackmans, a family whose children had known deficits because of their autism.

51. Defendants, individually and collectively, and by virtue of their own independent actions, and while acting as agents (actual or apparent), servants and/or employees of one another had a duty to maintain their premises in a condition that was safe for all residents, including the Sackmans, through proper supervision, inspection, repair, procedures, maitenence and follow-up, and to correct dangerous conditions of which it either knew or should have known by the use of reasonable care.  Moreover, Defendants, individually and collectively, and by virtue of their own independent actions, and while acting as agents (actual or apparent), servants and/or employees of one another had a duty to exercise ordinary diligence and

reasonable care in their provision of residential property management and affiliated housing services to their tenants, including the Sackmans, including housing selection, placement, management and maintenance. Further, Defendants, individually and collectively, and by virtue of their own independent actions, and while acting through as agents (actual or apparent), servants and/or employees of one another, had a duty to ensure that the residential property management and affiliated housing services needs of their tenants, including the Sackmans, were being met by properly hired and trained personnel, and that such services were performed lawfully and within the applicable standard of care.

52. Defendants, individually and collectively, and by virtue of their own independent actions, and while acting as agents (actual or apparent), servants and/or employees of one another engaged in a course of negligent conduct and failed to use that degree of care that was required in the provision of residential property management and affiliated housing services to the Sackmans. Defendants' negligence and breaches of their duty as a provider of such services included, but were not limited to:

  a. Failure to hire, train and supervise appropriate personnel with knowledge and ability to provide proper housing management services to the Sackmans;

  b. Failure to use the proper degree of care in the selection and placement of the Sackman's in close proximity to Soil Erosion Lake;

  c. Failure to notify and/or warn the Sackmans of the presence of Soil Erosion Lake;

  d. Failure to provide housing with adequate security and in a condition reasonably safe and suited for the Sackman's intended use;

  e. Failure to inspect the homesite and surrounding area for dangerous conditions, such as the presence of an unsecured body of water near tenant-occupied residential neighborhoods;

  f. Allowing a dangerous condition to be created and/or remain in an area which was inviting to residents, particularly children, and leaving it open and unsecured;

  g. Failure to make reasonable repairs to secure the property after Defendants were put on notice of possible deficiencies with the home; and

  h. Failure to allow the Sackmans to incur the expenses of, and make reasonable repairs to secure the property after the Sackmans requested the opportunity to make such repairs.

53. Defendants also owed Plaintiffs a duty to operate their affairs in a manner free from unlawful discrimination, and to hire, train, supervise and discipline its employees to fulfill that duty. Defendants' negligence and breaches of their duty to operate their affairs in a manner free from unlawful discrimination included, but were not limited to, the following acts or omissions:

  a. Failure to acquaint itself and its employees with fair housing laws and the prohibitions against discrimination based on disability;

  b. Failure to hire, train, supervise and discipline its employees in a fashion that assured Defendants' compliance with federal and state anti-discrimination laws; and

  c. Failure to ensure that federal and state anti-discrimination laws were complied with.

54. Each of the acts or omissions set forth within this section, operating singularly or in combination, was a direct and proximate cause of the injuries, physical and mental suffering, and death described in this Complaint.

55. It was foreseeable that Defendants' negligent conduct would cause Plaintiffs' fatal injuries.

56. The Defendants are liable to Plaintiff Lauren Sackman, in her capacity as Administrator of the Estate of Hannah Ross, for the excruciating physical and mental pain and suffering experienced by Hannah prior to her death, as well as for her funeral expenses and burial expenses.

57. In addition, Ms. Sackman is entitled to bring a wrongful death action for her daughter's death and is entitled to recover for the full value of the life of Hannah Ross.

## COUNT V
## FRAUD

58. Plaintiffs incorporate Paragraphs 1 through 34 and 48 through 57 as if fully set forth herein *verbatim*.

59. In addition to that wrongful conduct described above, Defendants by virtue of their own independent actions, and while acting through their agents (actual or apparent), servants and/or employees engaged in fraudulent misrepresentation with the intent to deceive.

60. Defendants' knowledge of its specific duties to make reasonable accommodations for disabled persons imposed by the federal Fair Housing Act, the Rehabilitation Act, and other laws and regulations was vastly superior to that of the Sackmans. Defendants knew or should have known that the law required that Balfour Beatty make reasonable and necessary accommodations in order to afford the Sackmans with equal opportunity to use and enjoy the home located at 135 Cypress Circle. However, Defendants fraudulently and recklessly

represented to the Sackmans that the requested modifications would not be permitted, even at the Sackmans' expense, and that if the Sackmans made necessary and reasonable modifications to the home, that the family could be cited and evicted.

61. Defendants misrepresented these facts with the intention to deceive the Sackmans, and to induce them to refrain from making and/or requesting reasonable and necessary modifications to the property.

62. The Sackmans justifiably relied on Defendants' false representations, and fearing recourse, refrained from making the reasonable and necessary modifications to secure the home for the safety of their special needs children.

63. As a result of the fraudulent and reckless misrepresentations of Balfour Beatty, 135 Cypress Circle was not reasonably secure and Ms. Sackman's fears that Hannah would be able to escape were realized. Defendants' misrepresentations and their material consequences were a direct and proximate cause of Hannah's elopement, drowning and death.

64. The Defendants are liable to Plaintiff Lauren Sackman, in her capacity as Administrator of the Estate of Hannah Ross, for the excruciating physical and mental pain and suffering experienced by Hannah prior to her death, as well as for her funeral expenses and burial expenses.

65. In addition, Ms. Sackman is entitled to bring a wrongful death action for their daughter's death and is entitled to recover for the full value of the life of Hannah Ross.

## COUNT VI
## NEGLIGENT MISREPRESENTATION

66. Plaintiffs incorporate Paragraphs 1 through 34 and 48 through 57 as if fully set forth herein *verbatim*.

67. In additional Defendants' fraudulent conduct, Defendants by virtue of their own independent actions, and while acting through their agents (actual or apparent), servants and/or employees made negligent misrepresentations to the Sackmans who were foreseeable parties that reasonably relied upon such misrepresentations to their detriment.

68. Defendants' knowledge of its specific duties to make reasonable accommodations for disabled persons imposed by the federal Fair Housing Act, the Rehabilitation Act, and other laws and regulations was vastly superior to that of the Sackmans. Defendants knew or should have known that the law required that Balfour Beatty make reasonable and necessary accommodations in order to afford the Sackmans with equal opportunity to use and enjoy the home located at 135 Cypress Circle. However, Defendants negligently misrepresented to the Sackmans that the requested modifications would not be permitted, even at the Sackmans' expense, and that if the Sackmans made necessary and reasonable modifications to the home, that the family could be cited and evicted.

69. The Sackmans justifiably relied on Defendants' negligent misrepresentations, and fearing recourse, refrained from making the reasonable and necessary modifications to secure the home for the safety of their special needs children.

70. As a result of the negligent misrepresentations of Balfour Beatty, 135 Cypress Circle was not reasonably secure and Ms. Sackman's fears that Hannah would be able to escape were realized. Defendants' negligent misrepresentations and their material consequences were a direct and proximate cause of Hannah's elopement, drowning and death.

71. The Defendants are liable to Plaintiff Lauren Sackman, in her capacity as Administrator of the Estate of Hannah Ross, for the excruciating physical and mental pain and

suffering experienced by Hannah prior to her death, as well as for her funeral expenses and burial expenses.

72. In addition, Ms. Sackman is entitled to bring a wrongful death action for their daughter's death and is entitled to recover for the full value of the life of Hannah Ross.

## COUNT VII
## PUNITIVE DAMAGES

73. Plaintiffs incorporate Paragraphs 1 through 72 as if fully set forth herein verbatim.

74. The acts and omissions of Defendants demonstrate fraud, intentional misconduct, willful and wanton misconduct, oppression, malice and a conscious indifference to the consequences, including the safety, health and welfare of Hannah.

75. The acts and omissions of Defendants were accompanied by aggravating circumstances.

76. The Defendants are liable for punitive damages to Ms. Sackman, as Administrator of the Estate of Hannah Ross.

77. Punitive damages should be awarded to Ms. Sackman, as Administrator of the Estate of Hannah Ross and against Defendants to deter them from repeated misconduct as set forth in this Complaint.

WHEREFORE having set forth the true allegations contained herein, Plaintiffs respectfully pray this Court grant the following relief:

(a) That a Summons be issued and copy of this Complaint and Summons be served on the Defendants as provided by law;

(b) That Plaintiff recover a judgment against the Defendants for compensatory damages for the full value of the life of Hannah and as shown by the evidence at the trial of this case;

(c) That Plaintiff, as Administrator of the Estate of Hannah Ross, recover a judgment against Defendants for compensatory damages as shown by the evidence at the trial of this case for the pain and suffering, medical, funeral and burial expenses of Hannah;

(d) That Plaintiff, as Administrator of the Estate of Hannah Ross, recover punitive damages from the Defendants;

(e) That Plaintiff recover the costs of this action;

(f) That Plaintiff be granted a full jury of 12 to try this case; and

(g) That the Court and jury grant such other and further relief as they may deem just and proper.

Respectfully submitted, this the _____ day of August, 2013.

/s/ C. Caleb Connor
C. Caleb Connor, Ga. Bar No. 021436
Kenneth L. Connor, Ga. Bar No. 143006
CONNOR & CONNOR, LLC
507 Courthouse Lane
Augusta, GA 30901
706-755-8378 (p)
800- 480-9715 (f)
caleb@theconnorfirm.com

*Attorneys for Plaintiff*